# EXHIBIT 1

*Affidavit of Alexis Torres*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| James Christopher Smith, | ) | C/A No.: 6:24-cv-06939-DCC-KFM |
| Plaintiff, | ) | |
| v. | ) | **AFFIDAVIT OF ALEXIS TORRES** |
| Officer Torres, | ) | |
| Defendant. | ) | |

Alexis Torres, who being duly sworn, deposes and says the following.

1. My name is Alexis Torres. I am a resident of the State of North Carolina, over the age of eighteen, and competent in all respects to make this Affidavit. I offer this Affidavit regarding the claims brought against me by Plaintiff, James Christopher Smith.

2. On June 7th, 2024, I was a Deputy with the Greenville County Sheriff's Office.

3. In my role as a Deputy, I conducted law enforcement operations within Greenville County, including responding to reported crimes, patrolling, executing warrants.

4. On June 7th, 2024, while on-duty, I responded to a call at 419 Mauldin Road, in Greenville County, South Carolina, in reference to a stolen vehicle.

5. Once I arrived at the incident scene, a gas station parking lot, other deputies already had multiple suspects in custody; Plaintiff, who had been a passenger in the suspect vehicle, was present.

6. Plaintiff was briefly held in the back of a patrol vehicle while another deputy determined whether or not he had outstanding warrants for his arrest; after it was confirmed that no such warrants existed, Plaintiff was released from custody and informed that he could leave.

①

7. Upon interacting with Plaintiff and other passengers in the vehicle, I suspected based on my experience and training that the Plaintiff and other passengers were under the influence of crack cocaine or a similar drug; however, this suspicion could not be confirmed with evidence that would support a finding of probable cause.

8. Once Plaintiff was released from custody, he refused to leave the incident scene, stating that he was not going to walk and insisting that we allow him to return the vehicle to the registered owner.

9. It was determined that the registered owner of the vehicle had reported it stolen, but had intended to rescind her report; she had not yet met with a deputy to do so, and thus the vehicle was still considered stolen.

10. Greenville County Sheriff's Office policy requires that a stolen vehicle be either impounded or returned to the registered owner.

11. Despite multiple attempts to explain to the Plaintiff that he did not have to walk and could simply wait for the registered owner to arrive and claim the vehicle, Plaintiff became increasingly hostile, yelling and cursing at myself and other deputies.

12. Plaintiff's behavior escalated, he continued to curse and be boisterous in the gas station parking lot, a public place.

13. After multiple requests that calm down, I informed the Plaintiff that, if he continued, he would be placed under arrest for public disorderly conduct.

14. At this point, Plaintiff mockingly shoved his hands towards me, as if consenting to the arrest; I then approached Plaintiff and told him to place his hands behind his back, intending to arrest him for public disorderly conduct.

15. Plaintiff then immediately pulled away from me, attempted to push my hands away, and started backing up.

16. While backing up, Plaintiff continuously taunted, "don't touch me, don't touch me," while moving in an aggressive manner and moving his arms aggressively.

17. In what I perceived as a threat, Plaintiff then stated, "if y'all touch me, there's going to be a problem."

18. Plaintiff then fled the parking lot, crossing the street into an abandoned parking lot, while I pursued on foot.

19. When I caught up with Plaintiff, I ordered him to turn around so that I could cuff him; instead, Plaintiff turned to face me, and aggressively swung his arm when I attempted to grab it.

20. At this point, I had no backup present; Plaintiff had been clearly and repeatedly hostile and had threatened me, all of which caused me to fear for my own safety. Plaintiff, a male, appeared to outweigh me and was potentially under the influence of drugs, all of which increased the likelihood of him overpowering me in close quarters.

21. Due to the danger to myself and Plaintiff's behavior, I issued a baton strike to Plaintiff's thigh. The placement of the strike was consistent with my training. Such a strike, properly delivered, stuns the leg, causing temporary numbness.

22. Though Plaintiff continued to briefly argue after the strike, he allowed me to handcuff him. No additional force was used against the Plaintiff. At no point was Plaintiff tackled to the ground and at no point did I deliver any knee strike to Plaintiff's back.

23. The records accompanying this affidavit are in fact actual true and correct copies of records regarding inmate Plaintiff's arrest. I have reviewed my incident report and the attached body-worn-camera footage and confirm that they are accurate.

This affidavit is made upon my personal knowledge and sets forth facts that would be admissible at trial. I declare under penalty of perjury that the foregoing is true and correct. Further affiant sayeth not.

THIS THE __21__ DAY OF ____April____, 2025.



Alexis Torres

__Berkeley____ COUNTY
STATE OF ~~NORTH CAROLINA~~
         South Carolina

_____
Notary Public

My commission expires: __1-2-2029__

(4)